IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JEFFREY ZELLER, Guardian of the Person and Estate of Shirley Zeller, | Civil No. 05-2546 (RBK) |
| Plaintiff, | |
| v. | |
| J.C. PENNEY COMPANY, INC. by itself and doing business as J.C. PENNEY SALON, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

Howard N. Sobel, Esq.
Law Offices of Howard N. Sobel
507 Kresson Road
Suite 1525
Voorhees, New Jersey 08043
        *Counsel for Plaintiff*

Darren C. Audino, Esq.
Benjamin J. Tartaglia, III, Esq.
Mintzer Sarowitz Ledva & Meyers
2070 Springdale Road
Suite 400
Cherry Hill, New Jersey 08003
        *Counsel for Defendant*

**DONIO, MAGISTRATE JUDGE:**

        In this action, Plaintiff seeks damages as a result of injuries sustained by Shirley Zeller when she fell at a J.C. Penney hair salon in Deptford, New Jersey, on October 14, 2004.  Ms. Zeller, who at the time of the incident was 76 years old, filed her complaint in the Superior Court of New Jersey, Camden County,

on April 11, 2005, alleging that her injuries were "caused solely or contributed to substantially by the reckless[ness], negligence and/or carelessness" of Defendant J.C. Penney Corporation, Inc.[1] <u>See</u> Petition of Removal [Doc. No. 1], Ex. A (Complaint), at ¶ 3. Defendant filed a notice of removal on May 16, 2005 based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1441(a).  <u>See</u> Notice of Removal [Doc. No. 1].

The matter presently before the Court concerns the admissibility of the proposed expert testimony of Plaintiff's liability expert, Brent A. Wallace.[2]  Defendant moves to preclude the testimony of Mr. Wallace on the grounds that Mr. Wallace is not qualified to render an expert opinion as to Defendant's liability under the standards enunciated in <u>Daubert v. Merrell Dow Pharm.,</u> <u>Inc.,</u> 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and that Mr. Wallace's opinion constitutes a net opinion.  The Court conducted an <u>in limine</u> hearing in connection with this matter on

1.  On July 19, 2006, the Superior Court of New Jersey, Camden County entered a Judgment of Legal Incapacity finding Ms. Zeller to be an incapacitated person, and appointing Jeffrey Zeller as Guardian of the Person and Estate of Shirley Zeller.  <u>See</u> Certification of Howard N. Sobel dated June 27, 2007 [Doc. No. 27], Ex. B.  By Order dated May 15, 2007, the caption of the instant matter was amended to name Jeffrey Zeller as Plaintiff, in his capacity as Guardian of the Person and Estate of Shirley Zeller.  <u>See</u> May 15, 2007 Order [Doc. No. 24], at 2.

2.  The Court notes that while Defendant's motion seeks to preclude the testimony of Mr. Wallace, Defendant states throughout his papers that he seeks to bar the expert report prepared by Mr. Wallace dated April 12, 2007 (hereinafter, the "Wallace report").  The Court shall treat Defendant's motion as seeking to preclude Mr. Wallace from testifying as an expert at trial.

2

October 29, 2007, at which time Plaintiff presented the testimony of Mr. Wallace. At the conclusion of Mr. Wallace's testimony, Plaintiff's counsel conceded that the testimony exceeded the four corners of the Wallace report and that the Wallace report "has problems," and made an oral application to amend the Wallace report based upon Mr. Wallace's testimony at the hearing. See T. at 77:20-78:8, 80:5-10.[3] The Court granted leave to file supplemental briefing with respect to Plaintiff's oral request to amend the Wallace report. On December 11, 2007, Defendant filed a supplemental brief [Doc. No. 33] in support of its motion to preclude the testimony of Mr. Wallace, and Plaintiff filed a formal motion [Doc. No. 34] seeking leave to amend the Wallace report in accordance with Mr. Wallace's testimony during the in limine hearing. Defendant filed opposition [Doc. No. 35] to Plaintiff's motion on December 23, 2007. Having reviewed the submissions of the parties, and the testimony from the October 29, 2007 in limine hearing, and for the reasons that follow, the Court grants Defendant's motion to preclude the testimony of Mr. Wallace, and dismisses as moot Plaintiff's motion to amend the Wallace report.[4]

---

3. References to the transcript of the in limine hearing held on October 29, 2007 shall be cited herein as "T."

4. Plaintiff did not seek leave to amend the Wallace report until after Defendant filed the motion to preclude Mr. Wallace's testimony and the Court conducted a Daubert hearing. The Court notes that there is no trial date set and Defendant has not yet served its expert report. The Court further notes, however, that Plaintiff's request to amend the report was filed after the deadline set forth in the scheduling order of May 11, 2007. The

On or about April 12, 2007, Plaintiff named Mr. Wallace as a liability expert in this matter.  See Certification of Howard N. Sobel dated June 27, 2007 [Doc. No. 27] (hereinafter "Sobel Cert."), at ¶ 5.  By letter dated May 23, 2007, Plaintiff's counsel provided a copy of the Wallace report to defense counsel, along with Mr. Wallace's curriculum vitae.  Id. at ¶ 6.  According to Mr. Wallace's curriculum vitae, he is currently the owner of the Skye Hair Studio in Maple Shade, New Jersey, where he is also a hair designer.  Id., Ex. F (Curriculum Vitae of Brent A. Wallace). Prior to opening Skye Hair Studio, Mr. Wallace was a hair designer at Biaggio Salon in Marlton, New Jersey, from April 2006 to August 2006, and a hair designer at Bernard's Hair Designs and Day Spa in Cherry Hill, New Jersey from December 1995 through April 2006.  Id. Mr. Wallace was also an "educator" for KMS Research, Inc. in Redding, California, from March 1999 through September 2001, a "shampoo/assistant" at Elegance Hair Salon in Northfield, New Jersey, from May 1994 through September 1995, and a site supervisor for Spectaguard, Inc. in Wynnewood, Pennsylvania, from March 1990 until August 1994.  Id.  Mr. Wallace's curriculum vitae contains no information about his education, and provides no further information about any other positions of employment he has held.

_____

Court has considered the Wallace report and testimony together, and concludes that the proffered expert opinion does not satisfy the requirements under Daubert and Rule 702 of the Federal Rules of Evidence.  Consequently, because the Court has considered Mr. Wallace's testimony in deciding Defendant's in limine motion, Plaintiff's motion to amend the original Wallace report to incorporate such testimony is moot.

See id.  In addition, Mr. Wallace's curriculum vitae contains no information regarding any training on site safety in hair salons. T. at 48:8-10.

At the in limine hearing, Mr. Wallace supplemented his curriculum vitae by describing the safety training that he has received in his various positions of employment.  Mr. Wallace testified that he was trained in site safety when he was hired as a shampoo assistant at Elegance Hair Salon, where the clientele was generally over the age of sixty.  T. at 12:11-15, 13:24-14:1, 14:20-15:14.  The salon was owned by David Hart, who trained Mr. Wallace to walk "elderly" clients to the various areas of the salon to avoid any hair mats underneath the chairs, perm rods on the floor, carts, steps, or other obstacles.  T. at 14:2-11; 14:20-15:4.  After Elegance Hair Salon closed, Mr. Hart began working at Bernard's, a salon in Cherry Hill, New Jersey, and he "brought" Mr. Wallace to Bernard's.  Id. at 16:12-15.  At Bernard's, Mr. Wallace was trained by Mr. Hart again, as well as the salon owner and the head of the salon shampoo department, on "walking the clients to and from every station, the safety of clients, draping, caping, getting clients coffee and such like that."  Id. at 16:15-22.  At the same time Mr. Wallace worked at Bernard's, he was also employed by KMS Hair Products, where he received training on how to walk clients up stairs to a stage, how to help them into their chair, and how to adjust the chair so that clients would not fall out of

the chair.  Id. at 17:9-20.[5]

Mr. Wallace also testified that, in addition to the safety training he received through his employment, he received safety training through vocational school.  In particular, Mr. Wallace testified that his vocational school instructors taught about "escorting clients into the salon and into their areas, how to seat them properly in the shampoo areas and removing them from shampoo bowls, how to position their head in the shampoo bowls to avoid neck injuries and things like that."  T. at 18:14-21.  He further testified that his vocational school instructors taught him to always walk elderly clients through the salon "because they have a tougher time getting around and because of the obstacles that occur in the salon[.]"  T. at 18:25-19:3; 22:19-25 ("Usually I would put my arm out or I would put my hand along their back . . . it was taught to me by both of my instructors at Camden County Vo-Tech.").  Mr. Wallace also testified that he learned through vocational school that every client, whether elderly or not, is to be assisted throughout a hair salon.  T. at 53:16-54:4.  In addition, Mr. Wallace testified that he regularly reads magazines of the hair salon industry, and that those trade publications

_____

5.  The Court notes that Mr. Wallace testified that he did not receive safety training in every salon in which he worked. Specifically, Mr. Wallace testified that when he worked at Biaggio Salon in Marlton, New Jersey, he did not receive any training in safety measures.  T. at 20:6-9.  According to Mr. Wallace, only shampoo assistants and assistants are taught safety procedures; hair stylists do not receive such training.  Id. at 20:8-14.

contain articles regarding the responsibility of a hair stylist to elderly clients, which is that the stylist should "see them through every station of the salon[.]"[6]  T. at 20:15-21:10, 36:15-25.  The protocol set forth in these magazines, Mr. Wallace testified, is consistent with his training at vocational school, and with the training he received from his mentors at Elegance Hair Salon and Bernard's.  Id. at 21:11-16.

In his report, Mr. Wallace does not opine on the cause of injuries to Shirley Zeller.   The Wallace report states in its entirety:

> After care [sic] review of the Zeller case file it is my professional opinion that implied standard protocol for handling a person such as Mrs. Zeller would be as followed.  [sic]  Upon arrival to the salon a staff member would assist the client to the various stations of the salon.  Whether that be the seating area, shampoo or styling area. Careful attention is always shown to our elderly clients due to their fragile nature. Our staffs [sic] responsibility is to accompany our clients to their designated area.  It is also standard to make sure with certainty that the styling chair is lowered completely as not to interfere with a clients [sic] exit from the chair.  Our staff members also help to robe and unrobed [sic] any clients we feel may have trouble getting in and out of the garment.

---

6.  However, when asked for the basis of his opinion that careful attention "always be shown to elderly clients," Mr. Wallace only testified that such opinion was based on his training with Mr. Hart, the owner of the Elegance Hair Salon at which Mr. Wallace previously worked.  T. at 69:24-70:3.  Mr. Wallace did not identify his vocational school training, his experience in any other salon or job, or trade publications as providing a basis for such opinion.

> In my 13 yrs as a Hair Designer and Owner
> caring for my clients from the time they enter
> my salon until the time they leave has always
> been standard place.

Sobel Cert., Ex. E (Wallace report).  Mr. Wallace conceded at the in limine hearing that his report does not state an opinion as to any conduct on the part of J.C. Penney that was "wrong."  T. at 39:1-6.  Further, the Court notes that the Wallace report does not describe what information Mr. Wallace reviewed in rendering his opinion in this matter.[7]

Mr. Wallace did not proffer his theory as to the cause of injuries to Shirley Zeller until the in limine hearing, where he testified as follows:

> A.   My understanding of what had happened was
>      Mrs. Zeller was getting out of the
>      chair and she had fallen getting out of the
>      chair going from her color station to the
>      shampoo area.
>
>                    . . .
>
> Q.   Did you review any testimony that
>      provided information that Mrs. Zeller was
>      unattended while she was moving or going
>      from the color station to the rinse
>      station, or whatever?
>
> A.   Yes, she was left unattended at the
>      styling chair where she had her color on.
>      The stylist left to apparently go get a
>      cushion for the shampoo area for Mrs.
>      Zeller.

---

7.  Mr. Wallace testified at the in limine hearing that he reviewed the deposition transcript of a witness to the incident, Christopher Bowe, the deposition transcript of Ms. Zeller's hairstylist, Natalie DeCaro, a statement given by Ms. Zeller, Ms. Zeller's answers to interrogatories, and photographs of the hair salon.  T. at 32:16-33:13.

T. at 33:19-21, 34:5-10.  In this regard, Mr. Wallace's opinion was as follows:

> Q.    Now, did you form an opinion as to a reasonable degree of what would be cosmetology certainty, I suspect, as to how Ms. DeCaro, who was the hairstylist, handled Mrs. Zeller while at J.C. Penney salon?
>
> . . .
>
> A.    My opinion was that she was left unattended, she was left unattended from the styling chair and at that point is what caused her to fall.

T. at 35:12-20.  However, Mr. Wallace also testified that he did not know "definitively" what caused Ms. Zeller to fall, and he only "assumed" that Ms. Zeller required physical assistance from the hair stylist because the hair stylist testified in her deposition that she had met Ms. Zeller at the front of the salon and escorted her back to the color station.  T. at 51:24-52:1, 54:12-24.  Mr. Wallace conceded that the hair stylist could have escorted Ms. Zeller to the back of the salon simply to converse, and not because Ms. Zeller needed assistance:

> Q.    Would it be fair to say that any stylist who may have known a patron, may have been a client for years, would have walked the patron just for simple conversation reasons to point A and point B within the salon?
>
> A.    Of course.
>
> Q.    Do you know whether or not that was the case with [the hair stylist] and the plaintiff?
>
> A.    No, I don't.

9

> Q.   This is just your assumption?
>
> A.   That's my assumption.
>
> . . .
>
> Q.   Well, your assumption is [Ms. Zeller] needed the help, isn't it?
>
> A.   That's my assumption.
>
> Q.   Right.  And based upon that assumption, you rendered this opinion; isn't that right?
>
> A.   I rendered, yes.

T. at 54:25-55:9, 56:20-24.  In addition, Mr. Wallace testified that while he assists his clients through the salon if he feels they need to be "cared for," other salons might not provide such assistance.  Id. at 57:24-58:8.  Further, he testified that whether to provide physical assistance to a particular patron is a "judgment call" made by the stylist.  T. at 69:3-14.

The admissibility of "expert" testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence and the United States Supreme Court's decision in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).[8]  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

---

8.  During the in limine hearing, the parties stipulated that the evidence issues in this matter are governed by federal law, and that the negligence action in this case is governed by New Jersey law.  T. at 5:9-20.

10

> education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony
> is based upon sufficient facts or data, (2)
> the testimony is the product of reliable
> principles and methods, and (3) the witness
> has applied the principles and methods
> reliably to the facts of the case.

FED. R. EVID. 702.  Thus, "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).  First, the proffered witness must be a qualified expert, meaning that the witness must possess specialized expertise.  Feit v. Great-West Life & Annuity Ins. Co., 460 F. Supp. 2d 632, 636 (D.N.J. 2006).  Second, the testimony must be reliable.  This requirement has been interpreted to mean that an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." Id. (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994), cert. denied, 513 U.S. 1190, 115 S. Ct. 1253, 131 L. Ed. 2d 134 (1995)).[9]  Thus, "[c]ourts need not admit bare conclusions or mere assumptions proffered under the guise of 'expert opinions[,]'" id. at 637, and "nothing in either Daubert or the Federal Rules of Evidence requires a district court

---

9.  In considering the reliability of an expert's testimony, "[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect.  The judge might think that there are good grounds for an expert's conclusion even if the judge things that there are better grounds for some alternative conclusion[.]" Paoli, 35 F.3d at 744.

11

to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).  Third, the expert's testimony must "fit," meaning that the testimony "'must be relevant for the purposes of the case and must assist the trier of fact.  Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)).  An expert who renders an opinion based on factual assumptions not present in the case "cannot be said to 'assist the trier of fact,' as Rule 702 requires." Elcock, 233 F.3d at 756 n.13.  Consequently, "[t]his type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement[.]" Id.  The proponent of expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence.  Paoli, 35 F.3d at 744.

       When faced with a proffer of expert testimony, the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597, 113 S. Ct. at 2799, 125 L. Ed. 2d at 485; see also FED. R. EVID. 104(a).[10]  "By means of a so-called 'Daubert hearing,' the

10.   Rule 104(a) states:

              Questions of admissibility generally.
              Preliminary questions concerning the
              qualification of a person to be a
              witness, the existence of a privilege,
              or the admissibility of evidence shall

district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." Schneider, 320 F.3d at 404 (citation omitted).[11]  In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), the United States Supreme Court extended the gatekeeping obligation from scientific evidence to encompass all expert testimony.

The Third Circuit in Paoli set forth factors for courts to consider in determining whether to admit expert testimony. These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Paoli, 35 F.3d at 742 n.8.  This list is "non-exclusive," and "each

---

> be determined by the court, subject to the provisions of subdivision (b).  In making its determination it is not bound by the rules of evidence except those with respect to privileges.

FED. R. EVID. 104(a).

11.   However, the Court's role as a gatekeeper "'is not intended to serve as a replacement for the adversary system.'"  Feit, 460 F. Supp. 2d at 636-37 (quoting Advisory Committee Notes to FED. R. EVID. 702).

factor need not be applied in every case." <u>Elcock</u>, 233 F.3d at 746
(citing <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 119 S.
Ct. 1167, 143 L. Ed. 2d 238 (1999)).

        As set forth above, the first prong of the Court's
analysis is whether Mr. Wallace is qualified to testify competently
regarding the standard of care J.C. Penney owed to its customers.
Defendant argues that Mr. Wallace is not qualified in that he has
"no engineering degrees or other formal education relating to the
proper upkeep of floors, engineering of salons in general, or any
other structural background." Certification of Benjamin J.
Tartaglia, III, Esquire [Doc. No. 26], ¶ 4. The Court notes that
in assessing qualifications, Rule 702 of the Federal Rules of
Evidence provides that a witness may be qualified as an expert by
"knowledge, skill, experience, training or education." FED. R.
EVID. 702. Therefore, the lack of a particular degree or any
advanced degree is not, in itself, dispositive, as one may qualify
as an expert by virtue of practical experience or other training.
The Court finds that through his training and experience, Mr.
Wallace has gained specialized knowledge of hair salon protocols
that qualify him as an expert in this case. Specifically, as
stated <u>supra</u>, Mr. Wallace testified that his training in vocational
school, his experience in the salons in which he has worked, and
his review of trade magazines throughout his career, all teach
methods for care of hair salon clientele. Therefore, Mr. Wallace's
particularized knowledge of the hair salon industry, gained through

14

his training and experience, is sufficient to qualify Mr. Wallace as an expert in this case.

Even though the Court has found that Mr. Wallace is qualified to render an expert opinion, the Court concludes that Mr. Wallace's proffered testimony in this case should be precluded under Daubert as not reliable and as not meeting the "fit" requirement under FED. R. EVID. 702.

With respect to reliability, in reaching his conclusion that J.C. Penney caused Ms. Zeller's injuries, Mr. Wallace testified that he relied on "implied standard protocol" that he contends applies to hair salons.  In particular, Mr. Wallace testified that, based on his training and experience, elderly clients should be escorted from station to station within a salon so that they avoid potential obstacles that may exist.  T. at 14:20-15:4, 18:22-19:4.  However, Mr. Wallace also testified that every salon does not necessarily adhere to the standards that Mr. Wallace has been taught by his mentors and at vocational school. T. at 57:24-58:8.  Moreover, the Court notes that nothing in Mr. Wallace's deposition, expert report, or testimony at the in limine hearing indicates that industry standards for the care of elderly clientele actually exist.[12]  In fact, Mr. Wallace testified that

---

12.  The Court notes that Mr. Wallace's assertion of an industry standard is not supported by citation to any industry association published guidelines or any other kind of publication or report. In fact, in his deposition, Mr. Wallace testified that he is not aware of any "code, standard or protocol that requires people to be taken from the chair to the shampoo bowl in a specific way" or requires clients to be held by the arm while walking from one

15

whether to provide assistance to a particular client walking through a salon is within the discretion of the hair stylist. Sobel Supp. Cert., Ex. A at 57:14-23.  The Court thus concludes that Mr. Wallace bases his opinion that Ms. Zeller should have been escorted from station to station only on his limited professional experience in the field of hair salon safety.  Mr. Wallace has not testified to any specific industry standard regarding salon safety. The difficulty in performing a <u>Daubert</u> analysis, therefore, is that Mr. Wallace's theory of liability was not arrived at by use of any "technique" capable of being evaluated for reliability under the factors set forth in <u>Paoli</u>.  <u>See</u> <u>Paoli</u>, 35 F.3d at 742 n.8.  Mr. Wallace did not apply any particular methodology to arrive at his opinion; he merely assumed the existence of an industry standard requiring J.C. Penney salon employees to escort elderly clientele through the hair salon, that Ms. Zeller required assistance walking through the salon, and that the hair stylist's failure to supervise Ms. Zeller when Ms. Zeller stood up from a chair caused Ms. Zeller to fall.  Under these circumstances, there is no "theory" or foundation to evaluate, or any way for the Court to determine the reliability of Mr. Wallace's opinion under <u>Daubert</u>.  <u>Cf.</u> <u>Milanowicz</u>

---

station to another in a salon.  Certification In Support Of Plaintiff's Motion To Amend The Report Of Its Expert, Brent Wallace With His Testimony [Doc. No. 34-2] (hereinafter "Sobel Supp. Cert."), Ex. A at 54:25-55:4, 57:24-58:3.  He further testified that the reference in his proposed expert report to "implied standard protocol for handling a person such as Mrs. Zeller" was based only on his "assumption" that it was standard procedure to walk clients through the salon, because that is what he was taught in vocational school.  <u>Id.</u> at 62:8-63:12.

v. Raymond Corp., 148 F. Supp. 2d 525, 540 (D.N.J. 2001) (holding that proffered expert testimony "fails to comport with every indicia of reliability" in that testimony "employed no defined methodology" and expert "did not even elaborate on his brief mention of general design principles, the alleged 'foundation' of his report."); Grdinich v. Bradlees, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) (precluding expert testimony based on expert's "own authority" rather than "industry standards" because there was "no reliable foundation" for expert opinion).

        The Court further finds that Mr. Wallace's opinion is based on factual assumptions not present in the case, and thus does not satisfy the "fit" requirement of Rule 702 of the Federal Rules of Evidence.[13]  See Elcock, 233 F.3d at 756 n.13.  In so finding, the Court finds instructive the decision of the district court in Estate of Ratcliffe v. Pradera Realty Co., 05-Civ. 10272, 2008 U.S. Dist. LEXIS 14 (S.D.N.Y. Jan. 2, 2008).  In that case, the plaintiffs' claims arose from the accidental death of a 23-year old

---

13. While Defendant moves to exclude Mr. Wallace's testimony as a net opinion, the Court notes that the net opinion rule is established under New Jersey law and "'is not a federal evidentiary rule and does not form a part of the Daubert/Kumho analysis.'"  D&D Assoc., Inc. v. Bd. of Educ. of N. Plainfield, Civ. A. No. 03-1026, 2006 WL 755984, at *6 n.1 (D.N.J. Mar. 20, 2006) (quoting Winnicki v. Bennigan's, No. 01-3357, 2006 WL 319298, at *15 (D.N.J. Feb. 9, 2006)).  However, the Court notes that the net opinion rule is merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence.  See Elcock, 233 F.3d at 756 n.13 (expert who renders opinion based on factual assumptions not present in case does not comply with "fit" requirement).

college student, who sustained fatal head injuries after falling in the common stairway of the building in which she lived.  2008 U.S. Dist. LEXIS 14, at *1.  No one witnessed the decedent's fall.  Id. at *6.  The plaintiffs brought suit against the owner of the building, alleging that the fall was attributable to the defectively loose handrail that ran along the stairs in the building.  Id. at * 5.  The plaintiffs obtained a report in which an expert concluded that, regardless of what caused the decedent's initial loss of balance, the decedent would have been able to "right" herself but for the loose handrail.  Id. at *14-15.  In determining that the expert report did not satisfy the requirements of Rule 702 of the Federal Rules of Evidence, the district court noted that the expert's conclusion "that the alleged defective conditions in the stairway constituted the 'interim event' that resulted in [the decedent's] fall" rested "sheerly on speculation." Id. at *15.  There was no evidence that, once the decedent lost her balance, she tried to grasp or actually did grasp the handrail. Id.  Moreover, there was no evidence to show that even if the decedent did grasp or attempt to grasp the handrail, a defect in the handrail or stairs precipitated the fall.  Id.  The expert's conclusion was therefore merely a "guess about what happened on the stairway," which was not "'based upon sufficient facts or data'" as required of expert testimony.  Id. (quoting FED. R. EVID. 702). Consequently, the Court excluded the expert's report in deciding a summary judgment motion because the expert's conclusions were too

speculative to satisfy the requirements of FED. R. EVID. 702.   Id.

In the present case, much like the conclusion of the expert in Ratcliffe, Mr. Wallace's conclusion that the alleged failure of the J.C. Penney hair stylist to escort Ms. Zeller through the salon rests sheerly on speculation.  Mr. Wallace can point to no evidence to show that Ms. Zeller required assistance while walking through the salon, or that, upon any initial loss of balance, she reached for the stylist's arm.  In fact, Mr. Wallace conceded that there were no pictures indicating how Ms. Zeller fell, that Ms. Zeller may have fallen because she tripped on the hydraulics of the chair or the matting on the floor, and that he merely "assumed" that Ms. Zeller needed assistance and does not know "definitively" what caused her fall.[14]  See T. at 51:24-52:1, 54:12-24, 71:1-6.  Therefore, there is simply no reason to conclude that Ms. Zeller was, at any time, using, grasping, or reaching for the stylist to prevent her fall.  Consequently, Mr. Wallace's guess

---

14.  The fact that the J.C. Penney hair stylist may have escorted Ms. Zeller from the front to the back of the salon does not, in itself, indicate that Ms. Zeller required assistance walking through the salon.  Further, even assuming that Ms. Zeller required assistance walking though the salon to avoid carts, mats or other potential hazards, and assuming that there is an industry standard requiring J.C. Penney to escort Ms. Zeller between stations, there is no evidence that Ms. Zeller fell while walking unsupervised between stations.  Rather, notwithstanding Mr. Wallace's concession that he reviewed no evidence that Ms. Zeller was caused to fall when she stood up from her chair, T. at 50:1-8, Mr. Wallace testified that he believed Ms. Zeller fell when standing up from her chair.  T. at 51:11-14.  Thus, Mr. Wallace's conclusion that J.C. Penney failed to comply with a purported industry standard that clients should be escorted between stations does not "fit" with Mr. Wallace's assumption that Ms. Zeller fell while standing up from her chair.

about what happened in the hair salon is pure speculation and is not based upon "sufficient facts or data" as is required of expert testimony. FED. R. EVID. 702. Cf. Feit, 460 F. Supp. 2d at 641 ("In the absence of any objective medical findings regarding head or neck injury, and without any analytical framework that would render the theory of possible head and neck injury a significant probability, let alone an uncontrovertible conclusion, Dr. Duong's opinion that Dr. Feit died of a head or neck injury is pure speculation, devoid of any discernible evidence or scientific method . . . [and the opinion is] categorically a 'net opinion,' a theory 'connected to existing data only by the *ipse dixit* of the expert.'")(quoting Joiner, 522 U.S. at 146, 118 S. Ct. 512, 139 L. Ed. 2d 508); Fochler v. Busch Entm't Corp., 4:94CV00071, 1995 U.S. Dist. LEXIS 9226, at *8 (E.D. Va. Jan. 5, 1995) (where plaintiff fell in amusement park but did not know what caused fall, and plaintiff's proposed expert offered opinion that park's use of particular type of stone contributed to accident but admitted he had no knowledge that plaintiff's fall was caused, even in part, by piece of stone, court excluded proffered expert testimony).

        For the reasons set forth above, the Court grants Defendant's motion to preclude the expert testimony of Brent A. Wallace under the strictures of Daubert and Rule 702 of the Federal Rules of Evidence.

                An appropriate Order will be entered.


Dated:  March 31, 2008          s/ Ann Marie Donio
                                ANN MARIE DONIO
                                UNITED STATES MAGISTRATE JUDGE

cc: Hon. Robert B. Kugler